# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| vs. ) | Case No. 09-40084-01-JAR |
| ) | 12-4053-JAR |
| DAMON L. HUNTER, ) | |
| ) | |
| Defendant/Petitioner. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Damon L. Hunter's 28 U.S.C. § 2255 Motion to Vacate Sentence (Doc. 98). Petitioner has also moved the Court for an evidentiary hearing pursuant to Rule 8(a) of the Rules Governing § 2255 Proceedings (Doc. 106). Petitioner claims that both his trial counsel and his appellate counsel provided ineffective assistance by failing to assert meritorious Fourth Amendment arguments regarding whether a State Trooper had valid consent to search Petitioner's rental vehicle. The Government asserts that Petitioner has suffered no prejudice from counsels' failure to argue the specific consent issue. After a careful review of the record, the Court denies Petitioner's motions without further evidentiary hearing because Petitioner's defense was not prejudiced by his trial or appellate counsels' alleged deficient performances.

### I.    Legal Standards

Under 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the

sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, "[t]he judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[1] A petitioner must allege facts which, if proven, would warrant relief from his conviction or sentence.[2] An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[3] Petitioner must allege facts which, if proven, would warrant relief from his conviction or sentence.[4] An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[5] A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by

---

[1] 28 U.S.C. § 2255(b).

[2] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995).

[3] 28 U.S.C. § 2255(b).

[4] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996).

[5] *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 ("the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[6]

Finally, Petitioner appears *pro se*. Therefore, the Court construes his pleadings liberally and does not hold them to the standard applied to an attorney's pleadings.[7] If a petitioner's motion can be reasonably read to state a valid claim on which he could prevail, the Court will do so despite a failure to cite proper legal authority or follow normal pleading requirements.[8] It is not, however, "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[9] For that reason, the court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[10]

## II. Background

On August 28, 2009, Kansas Highway Patrol Trooper Christopher Nicholas stopped Alice Isaacson and Petitioner on Interstate 70 in Wabaunsee County for a traffic violation. Isaacson was driving the vehicle and Petitioner was the passenger. Upon request, Isaacson and Petitioner gave Trooper Nicholas their drivers licenses and a rental car agreement contract. Petitioner rented the vehicle on August 23, 2009, from Alamo in Minneapolis, Minnesota. Isaacson was not listed on the rental contract as an alternate driver and the rental car contract was two days past due.

---

[6] 28 U.S.C. § 2255.

[7] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[8] *Id*.

[9] *Id*.

[10] *See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

3

Trooper Nicholas returned to his cruiser to review the identifications and rental paperwork. Trooper Nicholas had Isaacson sit in his cruiser and questioned her about the rental agreement, her relationship to Petitioner, and travel plans. Trooper Nicholas sent Isaacson back to the rental vehicle and had Petitioner come to the cruiser for questioning. Isaacson returned to the driver's seat of the rental vehicle. Trooper Nicholas then questioned Petitioner about the rental agreement, his relationship to Isaacson, and his future travel plans. Trooper Nicholas sent Petitioner back to the rental vehicle and Petitioner returned to the passenger seat of the rental vehicle.

Trooper Nicholas returned to the rental vehicle and gave back the licenses and paperwork. Trooper Nicholas started to walk away from the rental vehicle but turned around and inquired if he could ask a few more questions. Petitioner agreed. During that consensual encounter, Trooper Nicholas asked if he could conduct a quick search of the vehicle. Petitioner responded that he did not see the reason for it. Trooper Nicholas said that he needed a yes or no answer and asked the occupants to hand him the keys if it was okay to search the vehicle. Isaacson handed Trooper Nicholas the keys to the rental vehicle. Trooper Nicholas conducted a search and discovered marijuana in a suitcase that was located in the backseat of the vehicle. Trooper Nicholas arrested both Isaacson and Petitioner. Later, when the vehicle was impounded and thoroughly searched, officers found thirty five pounds of marijuana and one kilogram of cocaine in the suitcase and found a firearm in the center console.

A. **Procedural History**

On September 30, 2009, Petitioner was indicted for four offenses: (1) possessing with intent to distribute more than 500 grams of cocaine; (2) possessing with intent to distribute

marijuana; (3) possessing a firearm after having been convicted of a felony; and (4) possessing a firearm during and in relation to a drug trafficking crime.[11]

Petitioner filed a motion to suppress the drugs and firearm, arguing that Isaacson did not have authority to consent to the search of the vehicle.[12] This Court denied Petitioner's motion to suppress, finding that Isaacson had both actual and apparent authority to consent to the search.[13] Petitioner subsequently entered a conditional guilty plea to Count Four of the Indictment and reserved the right to appeal this Court's denial of the motion to suppress. The Court sentenced Petitioner to 60 months' custody.[14]

Petitioner appealed this Court's denial of the motion to suppress. On November 16, 2011, the Tenth Circuit Court of Appeals affirmed the denial of the motion to suppress, agreeing that Isaacson had both actual and apparent authority to consent to the search of the vehicle.[15] Defendant timely filed his § 2255 Motion on May 18, 2012.

### III. Discussion- Ineffective Assistance of Counsel

Petitioner claims he is entitled to relief under § 2255 because both his trial counsel and appellate counsel provided ineffective assistance. Petitioner claims that his trial counsel failed to put forth a meritorious Fourth Amendment argument by failing to investigate relevant Kansas laws on unauthorized vehicle use. Petitioner claims that his trial counsel should have argued that, under Kansas unauthorized vehicle use laws, Isaacson was an unauthorized driver, and that

---

[11]Doc. 1.

[12]Doc. 26.

[13]Doc. 61.

[14]Doc. 81.

[15]*United States v. Hunter*, 663 F.3d 1136, 1144 (10th Cir. 2011).

5

Trooper Nicholas illegally placed Isaacson back in control of the rental vehicle in order to manufacture her apparent authority to consent to the search. Petitioner claims that his appellate counsel failed to advance this same meritorious argument.

### A. Ineffective Assistance of Trial Counsel

Ineffective assistance of counsel claims, whether trial or appellate, are mixed questions of law and fact and are reviewed de novo.[16] The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[17] A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[18] First, a defendant must show that his counsel's performance was deficient in that it "fell below an objective standard of reasonableness."[19] To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[20] This standard is "highly demanding."[21] Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[22] Judicial scrutiny of the adequacy of attorney performance must be very deferential: "[A] court must indulge a strong presumption that

---

[16] *Boyd v. Ward*, 179 F.3d 904, 913 (10th Cir. 1999).

[17] U.S. Const. amend. VI.

[18] 466 U.S. 668 (1984).

[19] *Id*. at 688.

[20] *Id*. at 690.

[21] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[22] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

6

counsel's conduct falls within the wide range of reasonable professional assistance."[23] Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the distorting effects of hindsight.'"[24]

Second, a defendant must show that his counsel's deficient performance actually prejudiced his defense.[25] To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."[26] A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome."[27] This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[28]

A defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[29] "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[30]

---

[23] *Strickland*, 466 U.S. at 689.

[24] *Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

[25] *Strickland*, 466 U.S. at 687.

[26] *Id*. at 694.

[27] *Id*.

[28] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[29] *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[30] *Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

The Court finds that the record conclusively demonstrates that Petitioner is not entitled to relief on his ineffective assistance of his trial counsel claim nor his ineffective assistance of his appellate counsel claim. Assuming he meets the first prong, Petitioner cannot meet the second prong of the *Strickland* test in either claim.

Petitioner claims that his trial counsel failed to argue that Trooper Nicholas manufactured Isaacson's apparent authority to consent to the search by illegally placing her back in control of the rental vehicle. Essentially, Petitioner claims that Isaacson was operating the vehicle illegally because she was not listed on the rental contract. He argues that his trial counsel should have researched Kansas unauthorized vehicle use laws, which would have alerted counsel that Trooper Nicholas illegally allowed Isaacson to return to the driver's seat in the rental vehicle instead of giving her a citation for unauthorized vehicle use and removing her from operating the vehicle. Based on the alleged illegal nature of Isaacson's operation, Petitioner asserts that his trial counsel failed to argue that Trooper Nicholas illegally manufactured Isaacson's apparent authority to consent to the search of the rental vehicle.

Petitioner has not shown that he suffered any prejudice from his trial counsel's performance. Failure to advance these arguments did not prejudice Petitioner's defense in any material way. First, Isaacson's operation of the rental vehicle was not illegal. The private rental contract had no bearing on whether Isaacson was illegally operating the vehicle. Second, any arguments regarding Isaacson's apparent authority to consent to the search would have been unavailing because Isaacson had both actual and apparent authority to consent to the search of the rental vehicle. These reasons are discussed more fully below.

First, Isaacson legally operated the rental vehicle, even though she was not listed as an

authorized driver on the rental contract. An unauthorized but lawfully licensed driver can legally operate a rental vehicle under Kansas law, in the sense that they are not violating Kansas law when doing so. One recent and factually similar case, *Kansas v. Webber*, affirmed that an unauthorized driver can legally operate a rental vehicle.[31] There, police stopped a rental vehicle driven by a contractually unauthorized person.[32] Police asked the unauthorized driver, Webber, for consent to search the rental vehicle and he gave consent.[33] Webber later challenged the constitutionality of the search at a suppression hearing.[34] Ultimately, the Kansas Court of Appeals held that Webber possessed the requisite subjective expectation of privacy in the vehicle to challenge the search because "Webber was a licensed driver legally driving the vehicle. In addition, he was driving with an authorized driver who gave him permission to drive."[35]

Similarly, in a Sixth Circuit opinion, an unauthorized driver of a rental vehicle challenged a search of the rental vehicle that he was operating.[36] The Sixth Circuit stated that "[a]lthough Smith's use of the vehicle was clearly a breach of the agreement with Alamo, it does not follow that he has no standing to challenge the search. It was not *illegal* for Smith to possess or drive the vehicle, it was simply a breach of the contract with the rental company."[37] Moreover, in *this* case, the Tenth Circuit clearly stated that Isaacson was "legally driving the rental car, with

---

[31]*Kansas v. Webber*, No. 90,899, 2005 WL 283585, at *1 (Kan. Ct. App. Feb. 4, 2005).

[32]*Id.*

[33]*Id.*

[34]*Id.* at 2.

[35]*Id.* at 4.

[36]*United States v. Smith*, 263 F.3d 571, 582 (6th Cir. 2001).

[37]*Id.* at 587.

9

a legal driver's license."[38]  Ultimately, Isaacson may have breached the rental contract, but she was legally operating the rental vehicle as a lawfully licensed driver.  Therefore, Trooper Nicholas had no duty to remove or prevent her from returning to the driver's seat before she gave consent to search.

Petitioner alludes to a Kansas statute that prohibits deprivation of property and claims Isaacson violated this statute.  Petitioner is correct that the statute prohibits criminal deprivation of property and applies to motor vehicles.[39]  The Kansas deprivation of property statute makes it illegal for a person to obtain or exert "unauthorized control over property, with intent to deprive the owner of the temporary use thereof, without the owner's consent but not with the intent of depriving the owner permanently of the possession, use or benefit of such owner's property."[40]  For Isaacson to violate this statute, Isaacson needed a specific intent to deprive the owner of the temporary use of the vehicle.  Isaacson did not possess the requisite specific intent.  Isaacson told Trooper Nicholas that the rental agreement had, to her knowledge, been extended.  This negates any inference that she had the specific intent necessary to violate the deprivation of property statute.  Trooper Nicholas could not establish probable cause to charge Isaacson with criminal deprivation of property.  Therefore, since Isaacson did not violate any Kansas law, Isaacson lawfully operated the rental vehicle.

Isaacson's authority to consent to the search of the vehicle was not based on an illegality and any arguments on the issue would have been unavailing.  Based on the facts in the record

---

[38]*Hunter,* 663 F.3d at 1144.

[39]K.S.A. § 21-3705(a).

[40]*Id.*

and relevant Kansas law, Isaacson was legally operating the vehicle and had the authority to consent to a search of the vehicle. Trooper Nicholas had no duty to prevent Isaacson from operating the rental vehicle and therefore did not act illegally by allowing her to return to the driver's seat. Petitioner has not suffered prejudice from trial counsel's failure to argue the illegality issue.

Secondly, Petitioner's ineffective assistance of counsel claims only relate to Officer Nicholas illegally manufacturing Isaacson's apparent authority to consent to the search. Trial counsel did not specifically argue the apparent authority issue, but this failure did not prejudice Petitioner's defense. In fact, Petitioner's trial counsel moved to have the evidence suppressed, arguing that Isaacson lacked any authority to consent to the search.[41] This Court ruled that Isaacson had both actual authority and apparent authority to consent to the search.[42] On appeal, the Tenth Circuit agreed that Isaacson had both actual authority and apparent authority to consent to the search.[43] Therefore, any failure of Petitioner's trial counsel to argue that Isaacson's apparent authority was illegally manufactured would not have affected the outcome of the case. Even if Petitioner's trial counsel vigorously argued the apparent authority issue, Isaacson still had actual authority to consent to the search.

Petitioner has suffered no prejudice from the performance of his trial counsel because there is no reasonable probability that the results would have been different without the alleged errors. The Court denies Petitioner's motion for his ineffective assistance of trial counsel claim

---

[41]Doc. 26 ¶ 6.

[42]Doc. 61 at 17.

[43]*Hunter*, 663 F.3d at 1145.

11

because it does not meet the second prong of the *Strickland* test.

### B. Ineffective Assistance of Appellate Counsel

The same two-prong *Strickland* standard applies when assessing the effectiveness of appellate counsel.[44] When reviewing ineffective assistance of appellate counsel claims, reversal is only appropriate when appellate counsel fails to argue a "dead-bang winner."[45] A "dead-bang winner" is an issue which is obvious from the trial record and one that would have resulted in a reversal on appeal.[46] The Sixth Amendment does not require that an attorney raise every nonfrivolous issue on appeal.[47]

Petitioner asserts that his appellate counsel failed to put forth the same Fourth Amendment arguments that his trial counsel failed to argue, but Petitioner's ineffective assistance of appellate counsel claim fails for the same reasons that his ineffective assistance of trial counsel claim fails. Moreover, since Isaacson was held to have both actual and apparent authority to consent to the search, appellate counsel did not miss out on a "dead-bang winner" by failing to argue that Trooper Nicholas manufactured Isaacson's apparent authority to consent to the search. For the reasons outlined above, there is no reasonable probability that the results on appeal would have been different had appellate counsel asserted Petitioner's exact argument. Therefore, Petitioner has suffered no prejudice to his appellate defense. The Court denies Petitioner's ineffective assistance of appellate counsel claim for failure to meet the second prong of the *Strickland* test.

---

[44]*United States v. Rodriguez-Aguuirre*, 30 F. App'x 803, 806 (10th Cir. 2002).

[45]*Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

[46]*Id*.

[47]*Id*.

V.     **Certificate of Appealability**

Rule 11 of the of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. A court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[48] A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[49] When the adverse finding is based on procedural grounds, the petitioner must also show "'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"[50] While Petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA, he must "prove something more than the absence of frivolity or the existence of mere good faith."[51] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[52] For reasons detailed above, Petitioner has not made a substantial showing of the denial of a constitutional right, and the Court denies a COA.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody (Doc.

---

[48] 28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issue a COA. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

[49] *Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[50] *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

[51] *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[52] *Id.* at 336.

98) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for an Evidentiary Hearing (Doc. 106) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is denied a COA.

**IT IS SO ORDERED**.

Dated: January 3, 2013

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE